UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEERLESS NETWORK, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No. 14 C 7417 |
| vs. ) | |
| ) | Judge Thomas M. Durkin |
| MCI COMMUNICATIONS SERVICES, INC., ) | |
| VERIZON SERVICES CORP., and VERIZON ) | |
| SELECT SERVICES, INC., ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

On March 16, 2018, the Court entered a Memorandum Opinion and Order granting in part plaintiff Peerless Network, Inc.'s motion for partial summary judgment. R. 243. Peerless then filed a motion for entry of final order and Rule 54(b) judgment. R. 248. The parties conferred and agreed to most of the damages Peerless sought in its motion. Before the Court are the two remaining issues—(1) whether the statute of limitations in 47 U.S.C. § 415(a) applies to bar some of Peerless's charges; and (2) whether Peerless may recover compound interest on the unpaid charges. The parties filed supplemental briefs on the two issues. R. 260, 262. The parties also filed a stipulation agreeing to the total amount of damages owed to Peerless based on the Court's decision on the two issues. R. 266. For the following reasons, the Court enters final judgment in the amount of $48,456,131.66.

Analysis

I. STATUTE OF LIMITATIONS

The parties first dispute whether the statute of limitations in 47 U.S.C. § 415(a) of the Communications Act bars portions of Peerless's tariff charges. Section 415(a) imposes a statute of limitations on suits "by carriers for recovery of their lawful charges" to two years. There is no question that Peerless is a "carrier" who seeks to recover its "lawful charges" under its filed tariffs.[1] *See Espinal v. AFNI, Inc.*, 2018 WL 2733366, at *9-*10 (S.D.N.Y. June 7, 2018) (explaining that "lawful charges" in Section 415 include tariffed charges). Because Peerless filed this lawsuit on September 23, 2014, Verizon argues that Peerless may not recover any amounts for interstate traffic that were past due as of September 23, 2012. In response, Peerless argues that the parties' Standstill Agreement tolls the limitations period.

The parties entered into the Standstill Agreement on September 18, 2013. That agreement provides that "[n]either Party shall initiate any litigation, arbitration, regulatory action, or other proceeding seeking resolution of the Verizon Disputes or the Peerless Demands." R. 250-17, Standstill Agreement, § 2(f). The

---

[1] In passing, Peerless argues that Section 415(a) does not apply to its claims, and instead a four-year "catch-all" limitations period in 47 U.S.C. § 1658 applies. R. 262 at 8-9. But the case on which it relies, *AT & T Corp. v. Core Commc'ns, Inc.*, 806 F.3d 715, 731 (3d Cir. 2015), confirms that § 415(a) "applies . . . to charges that are subject to federal tariffing requirements." The issue in *Core Commc'ns* was the statute of limitations related to charges under a *state* tariff. The court chose not to address whether the federal catch-all statute or the state statute of limitations applied, because both were limited to four years. *Id.* Here, the issue is recovery of Peerless's charges under its *federal* tariff, which falls squarely in the scope of the two-year limitations period described in § 415(a).

interpretation of a contract is a question of law, determined by "the four corners of the document, not to outside sources." *Kass v Kass*, 91 N.Y.2d 554, 566 (1998).[2] "Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the [agreement]." *Id.* at 567. But where the "instrument was negotiated between sophisticated, counseled business people negotiating at arm's length," courts are "reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004).

Peerless argues that the Standstill Agreement operates as a tolling agreement because the parties' intent was to defer litigation. R. 262 at 7 (citing R. 250-17 at 1 ("[T]he Parties have determined that they wish to avoid litigation for a period of time.")). While the Court agrees that the parties' general intent was to defer litigation, the Standstill Agreement does not clearly toll the limitations period. Indeed, it includes no mention of tolling. Peerless's argument would require the Court to read a non-existent tolling term into an unambiguous contract between two sophisticated parties, which New York law prohibits. *See Vermont Teddy Bear*, 1 N.Y.3d at 475. Furthermore, implying a tolling agreement term would run counter to the Agreement's merger clause that states: "[t]his Agreement represents the entire agreement between the Parties relating to the subject matter hereof and supersedes any other oral or written agreements and understandings relating thereto." R. 250-

---

[2] New York law governs the Standstill Agreement. R. 250-17 § 10.

3

17 § 7. The merger clause bars "any claim based on an alleged intent that the parties failed to express in writing," *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 948 N.Y.S.2d 292, 298 (N.Y. App. Div. 2012), such as an intent to toll the statute of limitations here.

The Court recognizes the hardship of its determination that the Standstill Agreement does not toll the statutory limitations period. But the Court finds it difficult to incorporate a tolling provision when the represented parties did not explicitly contract for one. While at first glance, the title "Standstill Agreement" presumably freezes the parties and all of their rights and obligations as of the date of the agreement, the Court is required to look at the actual language of such an agreement. If the Standstill Agreement did nothing other than impliedly toll the statute of limitations, this would be a more difficult decision. But the Standstill Agreement is not worthless because of the lack of a tolling agreement. Consideration was exchanged as part of its execution and meaningful benefits accrued to Peerless, even if one of them was not the tolling of claims. *See*, *e.g.*, R. 250-17 § 1 (amending the tandem services agreement to include the "Wireless Termination Amendment"); *id.* § 2(a)-(d).

And, it is not inconceivable that the parties' agreement would have contained different terms or considerations had a tolling provision been included. In fact, Verizon suggests that to be the case, pointing to Section 2(c) of the Agreement, which states: "Peerless Settlement Credits shall be applied first to the *most recently* disputed amount, followed (if necessary) by the next *most recent* disputes, and so forth

4

until the oldest disputes are resolved." R. 250-17 § 2(c) (emphasis added). Verizon argues it "specifically negotiated for this provision so that its payments would apply to the newest invoices, allowing Verizon to clear away the older disputes as they fell outside the two-year limitations window." R. 260 at 8. The Court was not privy to those negotiations and absent an ambiguous agreement, cannot read a tolling provision into the Standstill Agreement now, despite the hardship it may cause Peerless.

In any event, the Court finds that the limitations period in Section 415(a) could not be tolled even if the parties had an explicit tolling agreement. In *Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co.*, 320 U.S. 356 (1943), the Supreme Court considered whether a time limitation in the Interstate Commerce Act for recovery of charges could be waived by an express agreement made before the end of the statutory period. *Id*. at 357. The Court first considered Congress's intent in promulgating the Commerce Act, explaining that the purpose of the Commerce Act was to impose a comprehensive scheme of regulation and to "secur[e] the general public interest in adequate, nondiscriminatory transportation at reasonable rates." *Id*. at 361. The Court further explained that the Act required "rigid adherence to the statutory scheme and standards" even in "matters concerning which variation in accordance with the exigencies of particular circumstances might be permissible, if only the parties' private interests or equities were involved." *Id*. The Court recognized the hardship of its ruling, but concluded that the action was time-barred despite the parties' agreement to extend the time period. *Id*. at 367.

This Court, like other courts to have dealt with the issue, reads *Midstate* not to create a generally applicable rule against tolling through private agreements, but rather as a directive to consider the legislative intent and policy purposes behind each statute under consideration. *See FDIC v. Williams*, 60 F. Supp. 3d 1209, 1214 & n. 7 (D. Utah 2014) (concluding that statute setting applicable statute of limitations was worded differently and had a different objective and policy than the Commerce Act, and distinguishing *Midstate* based on its discussion regarding congressional intent); *In re Lehman Bros. Sec. & ERISA Litig.*, 2012 WL 6584524, at *2 (S.D.N.Y. Dec. 18, 2012) (estopping defendant from asserting time bar it had voluntarily tolled by agreement, and finding *Midstate* inapplicable because its policy concerns of uniformity and equality of treatment were not implicated).

Here, the Communications Act has both a similar purpose to and uses similar language as the Commerce Act in *Midstate*. Like the Commerce Act's purpose to "secure the general public interest in adequate, nondiscriminatory transportation at reasonable rates," the Communications Act seeks to "regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available . . . to all the people of the United States, without discrimination . . . [a] communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. The limitations provisions of Section 415 also mimics the Commerce Act. The limitations provision at issue in *Midstate* read: "[a]ll actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." 320 U.S. at 357. The provision here is

6

nearly identical: "[a]ll actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after." 47 U.S.C. § 415(a).

The Court recognizes that courts have not ruled consistently on the issue. *See, e.g., Level 3 Commc'ns, LLC v. Illinois Bell Tel. Co.*, 2017 WL 3128987, at *3 (E.D. Mo. July 24, 2017) (private agreement could toll limitations period of 47 U.S.C. § 415); *Cent. Scott Tel. Co. v. Teleconnect Long Distance Servs. & Sys. Co.*, 832 F. Supp. 1317, 1321 (S.D. Iowa 1993) (same); *cf. In the Matter of Am. Cellular Corp. & Dobson Cellular Sys., Inc., Complainants*, 22 F.C.C. Rcd. 1083, 1093 (2007) ("[A] private agreement to toll the limitations period, without more, simply does not meet these narrow grounds for tolling.") (listing cases). But the similarities between the Commerce Act provision in *Midstate* and the Communications Act here—coupled with the general agreement that the limitations period in Section 415 should be construed strictly (*see Commc'ns Vending Corp. of Arizona v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004))—convinces the Court the limitations period in the Communications Act could not be tolled even if the parties had agreed to do so.

Nor does the Court believe the limitations period should be equitably tolled. Equitable tolling of a statutory limitations period is allowed "only in extraordinary and carefully circumscribed instances." *Id*. It is extended "only sparingly . . . in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to

7

pass." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). This is not an extraordinary situation warranting equitable tolling. At bottom, Peerless was represented by counsel, chose to enter into the Standstill Agreement that did not include a tolling provision, and received consideration for its agreement to postpone litigation. There is no evidence that Verizon lulled Peerless into entering into the Standstill Agreement to allow the filing deadline to pass.

Nor would allowing equitable tolling in this case comport with the purpose of Section 415. The FCC has explained that "the purpose of Section 415 is to protect a potential defendant against stale and vexatious claims by ending the possibility of litigation after a reasonable period of time has elapsed." *In the Matter of Am. Cellular Corp.*, 22 F.C.C. Rcd. at 1089. It noted that Section 415 serves as an "absolute, non-discretionary bar to the Commission's consideration of tardy complaints" because a complainant has "an affirmative obligation to exercise due diligence in preserving [its] legal rights" as soon as it receives notice "that it might have a claim." *Id.* at 1090. Allowing equitable tolling would be inconsistent with this absolute, non-discretionary bar.

Accordingly, Peerless may not recover amounts on its federal tariffs before September 23, 2012.[3]

---

[3] This ruling has no effect on the statute of limitations that applies to Peerless's state tariffs, which are governed by state law. *See Castro v Collecto, Inc.*, 634 F.3d 779, 784 (5th Cir. 2011) (rejecting Section 415(a) preemption of state statutes of limitations). Verizon makes a cursory argument as to the limitations period for the charges billed under the Tandem Services Agreement, R. 260 at 11, but the parties' stipulation, R. 266, does not differentiate between these charges. Accordingly, the Court will assume

## II. COMPOUND INTEREST

The second issue involves whether Peerless is entitled to compound interest for Verizon's late payments. The decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court. *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 937 (7th Cir. 2003). Peerless's federal tariff provides for late payment charges as follows:

> If any portion of the payment is received by the Company after the date due, or if any portion for the payment is received by the Company in funds which are not immediately available upon presentment, then a late payment penalty shall be due to the Company. The late payment penalty shall be the portion of the payment not received by the date due, multiplied by a late factor. The late factor shall be the lesser of: (a) a rate of 1.5 percent per month; or (b) the highest interest rate which may be applied under state law for commercial transactions.[4]

Peerless FCC Tariff No. 4, §§ 3.6.2 (D).[5]

Verizon does not dispute that Peerless can recover late payment charges in the first instance. It only disputes whether Peerless can recover compound interest—*i.e.* late payment charges on late payments. R. 260 at 3-5. Verizon argues the plain language of the tariffs indicates Peerless must bill the late payment charges to recover compound interest. In support of its position, Verizon points to the tariff

---

the parties have agreed to the limitations period other than as discussed in this opinion.

[4] Each of Peerless's state tariffs contains similar language except for the tariffs in Colorado, Ohio, and Virginia, which provide for a rate of 1.5 percent per month, and the tariff in Kentucky, which provides for a rate of the lesser of 0.000493 per day or the highest state interest rate. R. 250-1, Oost Decl. ¶ 13.

[5] *Available at* http://bit.ly/2KwGU19.

provisions (1) that charges are "due and payable within 30 days after the date of the invoice" (Peerless FCC Tariff No. 4, §§ 3.6.2(A), (B)); and (2) that a late payment charge "shall be due" to Peerless when "any portion of the payment is received by [Peerless] after the due date" (*id.* § 3.6.2(D)).

But there is no explicit requirement in the tariff that Peerless had to bill late payment charges to recover compound interest. *See* Peerless FCC Tariff No. 4; *cf.* Peerless Network of Kentucky, LLC, KY PSC Tariff No. 1, § 3.4.1(B) (requiring Peerless to "bill all charges incurred").[6] To the contrary, courts have interpreted similar language in tariffs to allow compound interest. For example, in *Commc'ns Network Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc.*, 2010 WL 3959601 (S.D.N.Y. Sept. 14, 2010), the court allowed compound interest where the language in the tariff stated: "[i]nterest at . . . (1) the rate of one and one-half (1.5) percent per month . . . shall accrue upon any unpaid balance commencing thirty (30) days after the date of the bill first sent for the unpaid amount." *Id.* at *9. There, like here, the contract allowed for late payments if accounts were not paid "within thirty (30) days from the due date."[7] The court in *MCI WorldCom* relied on a Fifth Circuit case interpreting a contract stipulating that any "unpaid balance shall bear interest monthly," entitled the non-breaching party to recover compound interest. *Id.* (citing *Exxon Corp. v. Crosby–Mississippi Resources. Ltd.*, 40 F.3d 1474, 1489 (5th Cir. 1995)). Here too, the

---

[6] *Available at* https://bit.ly/2yY6aLY.

[7] *See In re Worldcom, Inc.*, 2008 WL 2466224, at *2 (Bankr. S.D.N.Y. June 18, 2008), *aff'd sub nom. Commc'ns Network Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc.*, 2010 WL 3959601 (S.D.N.Y. Sept. 14, 2010).

10

plain language in the tariff allows Peerless to collect late payment charges at 1.5% *per month* when a payment is not received by the due date. *See also Phibro Animal Health U.S., Inc. v. Cornerstone AG Products,* 2006 WL 3733022, at *3 (D.N.J., Dec. 18, 2006) (term stating that "service charge of 2% per month will be made on all past due balances of the maximum applicable by law" allowed compound interest because the term "past due balance" implied an amount that could include charges other than simply the original invoice amount).

Equitable considerations further support allowing Peerless to recover compound interest. Compound prejudgment interest is the norm in federal litigation because it more readily ensures complete compensation to a harmed party. *See Tabacalera Contreras Cigar Co.*, 325 F.3d at 937-38; *CIT Commc'ns Fin. Corp. v. Wes-Tech Automation Sols., LLC*, 2011 WL 1807041, at *2 (N.D. Ill. May 11, 2011) ("Our Court of Appeals' observation that compound interest more fully compensates the plaintiff, holds true for federal and state law claims alike."). As the Court described in its previous order, Verizon engaged in self-help by withholding payments under Peerless's tariff for over six years without filing objections with the FCC or the courts to challenge the tariffs. R. 243 at 39. Peerless did not receive its billed switched access service charges during that time and was denied use of that money. Accordingly, compound interest is appropriate to fully compensate Peerless.

### III. RULE 54(B)

Finally, Peerless asks the Court to enter a final appealable order on Counts I through V and Count XI under Fed. R. Civ. P. 54(b). "When an action presents more

than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980). The Court's previous order, R. 243, and this order, resolve all of Peerless's claims. All that remain are Verizon's counterclaims, which seek to adjudicate different issues and which the Court has stayed pending a referral to the FCC. Because there is no just reason for delay, the Court enters final judgment in favor of Peerless on Counts I through V and Count XI.

## Conclusion

For the foregoing reasons, the Court grants Peerless's motion for entry of final order and Rule 54(b) judgment on Counts I through V and XI (R. 248) and awards Peerless $48,456,131.66.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 27, 2018